UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Crim. No. 04-10195-PBS |
| ) | |
| DANIEL GOMES ) | |

## POST-HEARING SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM ILLEGAL STOP AND SEARCH OF AUTOMOBILE ON APRIL 27, 2004

**Factual Background**[1]

**I.     The Officers' Testimony**

At hearing, on August 4, 2005 and September 9, 2005, the government presented the testimony of two officers who stopped a car on April 27, 2004. The officers saw a dark-colored sedan stopped at the corner of Campbell Street (or Willis Street) and Pleasant Street. The police cruiser was on Pleasant Street, and the officers indicated the other car should go first. The officers were close behind the sedan as it proceeded past Sycamore Street, turned right onto Maxfield Street, traveled three blocks to County Street, turned right again onto County Street, and then turned right onto Sycamore Street (a one-way street which cannot be turned onto from Pleasant Street). They testified that the driver failed to signal the right turn from County Street onto Sycamore Street,[2] so they put on their blue lights and immediately pulled the vehicle over.

---

[1] The facts herein are recited from the best of counsel's memory and notes of the hearing. The stenographic transcript of the hearing has been ordered, but is not yet prepared.

[2] The officers did not issue any citation for the alleged signaling violation, and made no mention of the alleged signaling violation in the memorandum written after the incident (Defendants' Exhibit 1).

The officers testified that they stopped the brand new sedan containing three black males at approximately 24 to 26 Sycamore Street, three blocks away from County Street. *See* Defendants' Exhibit 2. Neither officer was able to identify the defendant as the driver of the vehicle, or any other occupant. They testified that the driver provided his license, gave his name as Gomes, and said he lived at 26 Sycamore Street. Each testified that the car was parked in the driveway just off the street (Defendants' Exhibit 3) and that the occupants of the car went into 26 Sycamore Street through the front door, although video surveillance recordings of the incident clearly indicate that the car was driven all the way into the driveway, to the back of the house, and that the occupants of the car entered the house through the back door.[3]

## II.   Defendant's Testimony[4]

Gomes testified that he was driving a vehicle and stopped at the corner of Pleasant Street and Campbell Street. After being signaled to proceed by officers in a cruiser stopped on Pleasant Street, Gomes signaled and made a right turn onto Pleasant Street. He proceeded along Pleasant Street to Maxfield Street, where he again signaled and turned right. He knew he was followed by the police car during this trip, and through each turn. Gomes signaled and turned off Maxfield Street onto State Street, and from there onto Sycamore Street, again after signaling a right turn. After the last turn, the officers immediately pulled the automobile over, approximately in front of 26 Sycamore Street, i.e., right where the officers both testified the stop

---

[3] Defendant anticipates, as discussed at the hearing, filing a stipulation with the government to this effect, but has been unable to reach AUSA Cabell to prepare the stipulation. In the event a stipulation cannot be reached, defendant will provide the Court with the video tape.

[4] Defendant's testimony is not substantively admissible at trial. *Simmons v. United States*, 390 U.S. 377 (1968).

occurred. Gomes' version of the route taken is credible. The notion that, while being followed by a police cruiser, anyone would take the long way around, passing three streets he could have employed, at a moment that police presence was particularly unwelcome, is nonsensical. Most telling, the location of the stop, at 24-26 Sycamore Street, corroborates Gomes and contradicts the officers: Gangi testified that the cruiser was within a car length of the subject vehicle and both officers testified that the blue lights were activated immediately upon the claimed failure to signal and that the automobile pulled over immediately, yet it somehow ended up three blocks from the corner of County and Sycamore.

After stopping the vehicle, the police officer approached and demanded Gomes' license and registration, which were provided. Gomes asked why he had been pulled over, and the officer refused to provide a reason. The officer took the license and registration back to his cruiser, and returned a few minutes later. He gave the license and registration back to Gomes, still declined to give any reason for the stop, and did not write any citation.

## Legal Argument

I.    The Stop Was Illegal, and the Results Must Be Suppressed

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[E]ach occupant of a car has a right to challenge the propriety of a traffic stop under the Fourth Amendment." *United States v. Woodrum*, 202 F.3d 1, 6 (1st Cir. 2000). Under the Fourth Amendment, police officers may only "stop a moving automobile to investigate their *reasonable*

*suspicion* that the vehicle's occupants were, are, or will be engaged in criminal activity."[5] *Kimball*, 25 F.3d at 6 (emphasis in original; citations omitted).  To justify a claim of reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" on the defendant's rights.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  "In determining whether a challenged stop is reasonable, and thus, falls within the range of permissible investigatory stops, [the court must] engage in a two-step inquiry, asking '(1) whether the officer's action was justified at its inception'; and '(2) whether it was reasonably related in scope to the circumstances justifying the interference in the first place.'" *Flowers v. Fiore*, 359 F.3d 24, 32 (1st Cir. 2004) (citations omitted).

    Here, the police officers' did not have a reasonable suspicion justifying the initial stop of the car.  They claimed that the only grounds for the stop was the alleged failure to signal the turn.  Their testimony in that regard is simply incredible.  Officer Chaberek made no reference to the failure to signal in a post-incident memorandum, and neither officer explained how, after being immediately pulled over, the vehicle in fact was stopped three blocks distant.  They issued no citation.  Furthermore, the officers' recollection of the event is manifestly dim and incorrect.  Although the officers had been advised by the time they released the vehicle that it and the occupants were of import because they were under surveillance by local and federal officers, neither officer could identify any occupant of the vehicle, and they were in error about where the vehicle was parked and where the three men entered the house, as demonstrated by the contemporaneously made videotape.  Further, the claim that Gomes stated he lived at 26

---

[5] A failure to indicate a turn, which carries a minor fine, beginning at $25, as penalty, is only a civil infraction, not a criminal one.  *See* M.G.L. c. 90, § 14B.

Sycamore Street is contradicted by Gomes's license. See Exhibit A, certified Registry of Motor Vehicles record, attached hereto. Simply put, if the driver said he lived at 26 Sycamore Street, but the address on the license provided was different, the officers would have made note of it or at least remembered it.

The "reason" claimed for the stop is clearly pretextual. Given the fact that the officers followed three young black men in a brand new car off Pleasant Street into a residential neighborhood, believed to be a high drug area, and then onto a one-way street in that neighborhood, when by the officers' own admission the automobile had traveled in obedience to all traffic laws except for a claimed failure to signal on the *fourth* and last turn, the stop was consistent with and most probably the result of a documented pattern of racial profiling. Officer Gangi testified that until he and Officer Chaberek were halted by the telephone call advising the officers to "break them loose," the officers were about to take some unspecified action with respect to the automobile and the occupants. New Bedford police give citations to blacks and to males (and therefore most often to black males) far out of proportion to their percentages of the population. Massachusetts Racial and Gender Profiling Project, Preliminary Tabulations, Northeastern University Institute on Race and Justice, Tables A2a, A3a, A4a and B3a (January 20, 2004) (showing that New Bedford issues 73.5% of all citations to the 45.8% of its population which is male, 11.2% of citations to the 3.4% of its population (3.5% of its driving population) which is black, and 18.9% of citations to the 10% of its population which is non-white male) (relevant pages attached hereto as Exhibit B).[6] In fact, contrary to Officer Gangi's testimony, it is clear the police were following the automobile and only pulled it over when it was about to

---

[6] This study was conducted pursuant to a mandate from the Massachusetts Great and General Court. Exhibit B, p. 1, n.1.

leave the roadway. The testimony about following the vehicle onto County Road, clearly implausible at best, disguised the officers' intent to pull over this new car with three black men in it, with or without legal justification.

Officer Gangi's testimony that by April 2004 there was no discussion in the police department about racial profiling, despite a January 2004 Boston Globe article listing New Bedford as one of the top ten jurisdictions in the Commonwealth in terms of racially disparate searches (Exhibit C, attached hereto), is either another blow to the officers' credibility, or a stunning indictment of the entire New Bedford Police Department's inattention to this important issue.

In light of all these errors and inconsistencies in the officers' testimony, defendant's testimony that he did signal for the turn onto Sycamore Street should be credited. Because the stop was illegal, all evidence gathered from the stop should be suppressed.

The government's attempt to apply *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) to avoid the suppression is fruitless. That case's ruling that "identity cannot be suppressed" means only "that even a defendant whose identity is discovered through unconstitutional means may be physically brought to trial and tried under his or her true name." *United States v. Bowley*, United States District Court, D. Virgin Islands, Docket No. 2004/0169, June 8, 2005, p. 5; *see U.S. v. Olivares-Rangel*, 324 F. Supp.2d 1218, 1224 (D.N.M. 2004) (defendant's statements regarding his identity suppressed due to unlawful seizure).

## II.     Even if Not Suppressed, the Officer's Cannot Testify to Defendant's Identity

At the hearing, the officers could not identify the defendant. Accordingly, the statements of the driver of the vehicle are hearsay, and cannot be admitted. Fed. R. Evid. 801, 802. Unlike

6

statements by a party's agent or co-conspirator, the contents of this statement are not to be considered in determining if they were made by the defendant. Fed. R. Evid. 801(d)(2). Furthermore, even if they were to be considered, the contents of the statement alone would not suffice to establish the identity of the person making the statement. *Id*. Because there is no admissible evidence to show that defendant made the alleged statement, it is not an admission and must be excluded. Assuming arguendo that the stop was legally justified and without conceding that such evidence would be relevant, the officers can at most testify that they observed a vehicle driving, stopped it at 24-26 Sycamore Street, and then observed the car being parked and the passengers enter the residence.[7]

## Conclusion

For the reasons stated above, this Court should suppress all evidence seized as a result of the illegal stop and search of the car which Gomes was driving on April 27, 2004. At a minimum, the Court must exclude the hearsay statement that a "Gomes" was the driver of or present in the vehicle, because the officers could not identify him.

DANIEL GOMES<br>
By his attorney,<br><br>
/s/ *John H. Cunha Jr.*<br><br>
John H. Cunha Jr.<br>
B.B.O. No. 108580<br>
CUNHA & HOLCOMB, P.C.<br>
One State Street, Suite 500<br>
Boston, MA 02109-3507<br>
617-523-4300

Dated: September 16, 2005                                                           H:\Word\Crim\Gomes\Memo Suppress Stop.post-hearing.wpd

---

[7] As noted *supra*, note 4, defendant's testimony is not substantively admissible at trial. *Simmons v. United States*, 390 U.S. 377 (1968).